**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                    Case No. 1:18-CR-02945-WJ

LUCAS MORTON,

      Defendant.

<u>**ORDER REGARDING MOTION FOR *LAFLER/FRYE* HEARING**</u>

      **THIS MATTER** came before the Court on the United States' Motion for *Lafler/Frye* Hearing, filed February 13, 2023.  Doc. 619.  Chief Judge Johnson granted the motion for a hearing and referred the matter to me pursuant to FED. R. CRIM. P. 59(a) to conduct the hearing. Doc 622 at 1.  He further ordered me to "make the prosecution's proposed plea agreements sealed exhibits at the hearing and verify that Defendants and defense counsel discussed the terms of the plea agreements before rejecting the United States' proposed resolution."  Doc. 622 at 2. The Court held a hearing on the motion with respect to Lucas Morton on February 24, 2023. Doc. 645.  AUSAs Kimberly A. Brawley and Jackson Tavo Hall appeared on behalf of the United States.  Mr. Morton is representing himself and was personally present.  Joseph E. Shattuck, standby counsel for Mr. Morton, also was present.

      Based on the representations of counsel and the testimony of Lucas Morton, the Court finds the following facts:

      On January 24, 2023, the United States mailed a letter[1] to Mr. Morton extending a plea offer to him.  The letter outlined the material terms of the proposed plea agreement, and the

---

[1] The letter was dated January 23, 2023, but it was mailed on January 24, 2023.

proposed plea agreement was attached.  The letter and proposed plea agreement are attached as sealed government exhibit 4 to the minutes of the hearing.  *See* Doc. 645-1.  Mr. Morton confirmed at the hearing that this was the letter and proposed plea agreement that he received.

On January 23, 2023, the United States sent an email to Mr. Shattuck stating that it was extending a plea offer to Mr. Morton; the letter to Mr. Morton and the proposed plea agreement were attached to the email.  *See* Doc. 645-1.  The plea offer was contingent on all Mr. Morton's co-defendants accepting their plea offers and pleading guilty.  The day after receiving the email, Mr. Shattuck's paralegal, Cindy Gilbert, took a copy of the proposed plea agreement to Mr. Morton.  Mr. Morton reviewed the proposed plea agreement with Ms. Gilbert.  Ms. Gilbert asked Mr. Morton if he had any questions.  He did not.  When Mr. Morton received the letter from the United States and the proposed plea agreement in the mail, he read them carefully.  He understood the government's offer.  Although he could have called his standby counsel if he had any questions, he did not have any questions so he did not call him.

On January 27, 2023, Mr. Morton met with the prosecutors, and they went over the proposed plea agreement with him.  The prosecutors asked Mr. Morton if he had any questions, or if there was anything in the proposed plea agreement that would like to negotiate.  Mr. Shattuck also was present, and he was available to answer any questions Mr. Morton had.  After going over the plea agreement with the prosecutors, and after having an opportunity to discuss the terms of the plea agreement with both Mr. Shattuck and the prosecutors, Mr. Morton told the prosecutors that he declined the plea offer.  The prosecutors, however, told Mr. Morton that the plea offer remained open until February 10, 2023, if he changed his mind.

Mr. Morton and Mr. Shattuck participated in a meeting with all defendants on February 9, 2023.  Mr. Shattuck again offered to answer any questions Mr. Morton had about the proposed

plea agreement.  Mr. Morton did not have any questions; he understood the plea offer.  Mr. Morton had a full and complete opportunity to discuss the plea offer with Mr. Shattuck if he wanted to.  After thoroughly reviewing the plea offer himself, and also after discussing the proposed plea agreement with the prosecutors, Mr. Morton himself decided to reject the plea offer.  Mr. Morton understood that it was solely his decision whether to accept or reject the plea offer.  He was not threatened or forced in any way to reject the plea offer.

Mr. Morton understood that he could not later change his mind and get the same plea deal that the United States offered him in January of 2023.  He also understood that the government's offer was a global offer, and that if he rejected the plea offer, his co-defendants likely could not accept the plea offer that was extended to them.  Mr. Morton testified that he understood that in rejecting the government's plea offer, his case likely would result in a jury trial.  He further understood that if he goes to trial and is convicted, his sentence might be longer than the sentence he would have received had he accepted the government's plea offer.  He also understood that if he goes to trial and is convicted, he cannot then change his mind and try to get the plea deal that the government offered him in January of 2023.

After considering all the information and evidence provided at the hearing, the Court is convinced that Mr. Morton received the government's plea offer, understood its terms and effects, independently and voluntarily rejected it after having the opportunity to consult with competent counsel, and understood that rejecting the offer likely would result in a jury trial.

**IT IS THEREFORE ORDERED** that the United States' Motion for *Lafler/Frye* Hearing is **GRANTED** to the extent that the Court held the hearing.  The Court finds that the United States extended a formal plea offer to Mr. Morton on January 23, 2023, in the form of a proposed plea agreement, that offer was conveyed and explained to Mr. Morton in a timely

manner, and, after having a full and complete opportunity to discuss the offer with the prosecutors and his standby counsel, Mr. Morton knowingly and voluntarily rejected the plea offer.

---

**THE PARTIES ARE NOTIFIED** that pursuant to FED. R. CRIM. P. 59(a), "[a] district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense."  "A party may serve and file objections to [a magistrate judge's order on a non-dispositive pre-trial matter] within 14 days after being served with a copy of a written order . . . ." *Id.*  The party's objections must be both timely and specific to preserve an issue for review by the district court or appellate court.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  If objections are timely filed, the district judge must consider the objections, but will only set aside those parts of the magistrate judge's order which are "contrary to law or clearly erroneous."  FED. R. CRIM. P. 59(a).  If objections are not timely filed, the waiver rule applies.  *See United States v. Johnson*, 732 F. App'x 638, 650–51 (10th Cir. 2018) (unpublished) (defendant's failure to timely object to a magistrate judge's non-dispositive order under Rule 59(a) waived defendant's argument on appeal); *see also* FED. R. CIV. P. 59(a) ("Failure to object in accordance with this rule waives a party's right to review.").

---

_____

**LAURA FASHING**
**U. S. MAGISTRATE JUDGE**