## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                               No. 18-cr-2945-WJ

LUCAS MORTON,

      Defendant.

### MEMORANDUM OPINION AND ORDER DENYING
### DEFENDANT MORTON'S MOTION FOR A NEW TRIAL

**THIS MATTER** is before the Court on *pro se*[1] Defendant Lucas Morton's Motion for a New Trial (**Doc. 1050**[2]) the United States' Response (**Doc. 1086**) in opposition, and Defendant's Reply[3] (**Doc. 1119**). On October 17, 2023, a federal jury convicted Defendant Morton of: (1) Conspiracy to Provide Material Support to Terrorists; (2) Providing Material Support to Terrorists (3) Conspiracy to Murder an Officer or Employee of the United States; (4) Conspiracy to Commit Kidnapping; and (5) Kidnapping in violation of 18 U.S.C. §§ 2339A, 2339A & 2, 1117, 1201(c), and 1201(a) & 2, respectively. **Docs. 85 & 1016**. Defendant Morton now moves for a new trial under Fed. R. Crim. P. 33, arguing that errors in the proceeding deprived him of his Due Process Clause right to a fair and impartial trial. In support of his position, Defendant asserts three specific grounds: (1) prosecutorial misconduct; (2) jury misconduct; and (3) discovery violations. The Court finds that none of Defendant's arguments are supported by the law or the record and, as

---

[1] The Court affords "a liberal construction to pleadings of a defendant appearing *pro se*." *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002).

[2] Defendant filed the same motion three times. **Doc. 1046 ("Filed in Error"), Doc. 1048, and Doc. 1050**. The Court will treat **Doc. 1050** as Defendant's pleading because it is the latest filed version. *See* **Doc. 1086 at 1 n.1**.

[3] The Court granted (**Doc. 1093**) Defendant's untimely request (**Doc. 1092**) for an extension to file a reply brief. After receiving the request—a week after the January 19, 2024, due date—the Court provided Defendant Morton until February 15, 2024, to file. His reply was filed on February 20, 2024.

such, Defendant's Motion is **DENIED**.

## BACKGROUND

On August 5, 2018, Defendant Lucas Morton—along with his four co-Defendants—was charged by Criminal Complaint (**Doc. 1**). Defendant was subsequently indicted by a grand jury in September 2018 and again by superseding indictment in March 2019. **Docs. 25 & 85**. The United States alleged that Defendant (together with the other co-Defendants), kidnapped a minor child from Georgia and transported him to New Mexico where he died. **Doc. 85 at 7–9**. It was also alleged that Defendants built and maintained a "training compound" with a firing range and underground tunnels in order to prepare for attacks on federal government officials and institutions. **Id. at 2–5**. In preparing for these pending attacks, Defendant was alleged to have provided material support and resources to terrorists. **Id.**

Prior to Defendant's instant Motion, the Court considered and rejected similar motions containing substantially similar arguments. First, in January 2023, the Court denied the Defendants' joint motion (**Doc. 479**) to dismiss the indictment for "Outrageous Government Conduct." **Doc. 570**. The Court found the Government did not participate in any wrongdoing—let alone create the crime or coerce Defendants into committing the acts. **Id. at 1**. Next, in April 2023, the Court declined to suppress the children's prior statements to law enforcement (**Doc. 710**). Additionally, the Court considered half a dozen Defense pleadings regarding motions to sever (**Docs. 598, 608, 609, 635, 648, 686**). The Court denied each of these motions (**Docs. 873 & 880**).

The case proceeded to trial. On October 17, 2023, a jury convicted Defendant Morton of all five counts charged in the Superseding Indictment (**Docs. 85 & 1016**). The Court submitted a hybrid general and special verdict form to the jury—some Counts required specific findings of fact whereas other Counts only required "Guilty / Not Guilty" be written (**Doc. 1016**). The jury

unanimously found Defendant conspired to provide, and did provide, material support to terrorists as charged in Counts 1 and 2. *Id.* **at 1**. The jury unanimously found that Defendant Morton committed six unlawful acts in furtherance of Count 3: the Conspiracy to Murder an Officer or Employee of the United States (*Id.* **at 2–3**). Lastly, the jury unanimously found Defendant guilty of conspiracy to kidnap as well as the kidnapping of Abdul Ghani Wahhaj[4] that resulted in his death. *Id.* **at 3–4**.

## LEGAL STANDARD FOR MOTION FOR NEW TRIAL

A motion for a new trial under Fed. R. Crim. P. 33 "is not regarded with favor and should be granted only with great caution." *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir. 1998) (quoting *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992)). The Rule authorizes motions for a new trial "*if the interest of justice so requires*." Fed. R. Crim. P. 33 (emphasis added). Typically, a Defendant brings a Rule 33 motion based upon trial error, including false testimony, failure to disclose exculpatory evidence, or misconduct affecting the jury. 3 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 581 (4th ed.). But "if the substantial rights of the defendant were not affected, the court should refuse to grant the defendant's motion." *Id.*

When ruling on a Rule 33 motion, the trial court is afforded broad discretion. *United States v. Jordan*, 806 F.3d 1244, 1252 (10th Cir. 2015). Because a "motion for new trial is based on the presumption that the verdict against the defendant is valid, the burden is on the defendant" to demonstrate why a new trial should be granted. *United States v. Velarde*, 860 F. App'x 132, 137 (10th Cir. 2021) (unpublished) (internal quotations omitted). A motion for a new trial is granted "only in exceptional circumstances" when "the evidence preponderates heavily against the verdict." *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994). This is not one of the rare or

---

[4] The Court and Parties previously referred to Abdul Ghani Wahhaj as "JOHN DOE" or "John Doe 1." *See* **Doc. 1002 at 2 n.1**.

exceptional cases. *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1126 (10th Cir. 2009) (citing *Evans*, 42 F.3d at 593).

## DISCUSSION

Defendant Morton asserts three categories of error in support of his Rule 33[5] Motion: (1) prosecutorial misconduct; (2) jury misconduct; and (3) discovery violations. **Doc. 1050 at 1 & 13**. Upon review, the Court does not find any errors—much less errors that prejudiced Defendant's right to a fair and impartial trial. The Court will, however, address[6] each purported error in turn.

### I. Alleged Prosecutorial Misconduct

Defendant alleges the United States committed prosecutorial misconduct at trial by making an improper opening statement[7] that "paved the way" for perjured testimony evidence (**Doc. 1050 at 79**). Yet, simultaneously, Defendant Morton concedes the allegation of prosecutorial misconduct boils down to "only several lines of a 20 day or so trial transcript." *Id.* **at 80**. The United States responds that Defendant cannot establish prosecutorial misconduct in this case, much less any misconduct that would require granting a new trial (**Doc. 1086 at 5–11**). The Court agrees.

Prosecutorial misconduct is the overstepping of "the bounds of that propriety and fairness which should characterize the conduct of [the United States Attorney] in the prosecution of a criminal offense . . . ." *Berger v. United States*, 295 U.S. 78, 84 (1935). The Court uses a "two-step process when evaluating claims of prosecutorial misconduct. First, we examine whether the

---

[5] Defendant's motion is stylized as a "Motion for New Trial," however, in his 94-page motion he mentions Rule 29 on five occasions (**Doc. 1050 at 4, 47, 81, 86, 94**). Although the Federal Rules of Criminal Procedure do not explicitly authorize motions for reconsideration, the Tenth Circuit has recognized three specific situations when they are appropriate, namely: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *United States v. Warren*, 22 F.4th 917, 927 (10th Cir. 2022) (quoting *Christy*, 739 F.3d at 539); *see also United States v. Randall*, 666 F.3d 1238, 1241–42 (10th Cir. 2011). Defendant Morton cannot—and did not—allege any of these circumstances apply to him.

[6] When referring to the trial transcript ("Tr."), the Court has included citations to the specific page in the trial transcript. **Doc. 1078** provides a master index of all 15 volumes of the trial transcript from page 1–2847. The volumes themselves are accessible at **Docs. 1051–1077 & 1083**.

[7] Defendant correctly notes that he "did not properly preserve this argument during trial." **Doc. 1050 at 79**.

conduct was, in fact, improper. If we answer that question in the affirmative, we must then determine whether it warrants reversal." *United States v. Oberle,* 136 F.3d 1414, 1421 (10th Cir. 1998) (quoting *United States v. Ivy*, 83 F.3d 1266, 1288 (10th Cir. 1996)). Without prejudice, "a prosecutor's improper statements alone will not require a new trial." *United States v. Christy*, 916 F.3d 814, 826 (10th Cir. 2019). Thus, "[t]he relevant question is whether the [prosecutor's] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168 (1986) (internal quotations omitted). Here, Defendant's allegations fall well short of the required showing.

A review of the record shows that the United States opening statement (**Tr. at 21–22**) previewed evidence testified to by Jamil Louis-Jacques (**Tr. at 369–373, 380**) and Hakima Ramzi (**Tr. at 102–07**) that was then properly argued in closing (**Tr. at 2680**). Here, there was no prosecutorial misconduct. And there was certainly no misconduct that "influence[d] the jury to render a conviction on grounds beyond the admissible evidence presented." *United States v. Pena*, 930 F.2d 1486, 1491 (10th Cir. 1991); *see also United States v. Taylor*, 514 F.3d 1092, 1102 (10th Cir. 2008); *United States v. McBride*, 656 F. App'x 416, 422 (10th Cir. 2016) (unpublished).

## A. Allegations of improper witness testimony and subornation of perjury

Defendant's argument regarding prosecutorial misconduct is primarily rooted in claims that the United States elicited perjured[8] testimony from Jamil Louis-Jacques and SA Taylor (**Doc. 1050 at 79–86**). To determine whether a prosecutor committed misconduct by asking a question that elicits a potentially improper answer, the Court asks: "(1) whether the prosecutor acted in bad faith, (2) whether the district court limited the effect of the improper statement through its

---

[8] In his reply, Defendant Morton now raises the argument that Hakima Ramzi's testimony was also the product of perjury (**Doc. 1115 at 2–3**). The general rule, however, is that arguments raised for the first time in a reply brief are waived. *See United States v. Leffler*, 942 F.3d 1192, 1199 (10th Cir. 2019). Accordingly, Defendant Morton waived this line of argument with respect to Hakima.

instructions to the jury, and (3) whether the improper remark was inconsequential in light of the other evidence of defendant's guilt." *United States v. Meridyth*, 364 F.3d 1181, 1883 (10th Cir. 2004) (citation omitted). Defendant's prosecutorial misconduct claims are without merit.

A prosecutor's knowing use of perjured testimony is misconduct that goes beyond the denial of a fair trial. *United States v. Herrera*, 51 F.4th 1226, 1247 (10th Cir. 2022) (citing *United States v. Garcia*, 793 F.3d 1194, 1207–08 (10th Cir. 2015)). To succeed on a false-testimony or perjury claim, Defendant Morton must show: "(1) that the testimony was false, (2) that it was material, and (3) that it was knowingly and intentionally used by the government to obtain a conviction." *United States v. Wolny*, 133 F.3d 758, 762 (10th Cir. 1998) (citations omitted). To succeed on a Due Process Clause claim, Defendant must show: (1) a government witness committed perjury, (2) the prosecution knew the testimony to be false, and (3) the testimony was material. *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

Defendant Morton cannot prove either. In fact, Defendant admits to "speculat[ing] that the United States . . . presented perjured testimony or false declaration." **Doc. 1050 at 4**. Defendant Morton also states that his claim regarding "irregularities in the Grand Jury proceeding are no more than speculation and conjecture." *Id.* **at 5**. Therefore, no matter how Defendant Morton's pleading is construed, there is no evidence the witnesses gave false testimony. Additionally, Defendant Morton's motion altogether fails to acknowledge that Jamil's testimony was corroborated by other witnesses (**Tr. at 587–88 & 825–27**).

## 1. Testimony of SA Travis Taylor

Significant portions of Defendant's motion are spent detailing his concerns about how the children were interviewed between 2018–19 (**Doc. 1050 at 21–30, 33–34, 43, 49–55**). The Court already ruled on this—finding the children's statements were "not the product of coercion, and

therefore . . . d[id] not violate the Defendants' right to a fair trial." **Doc. 710 at 8**.

Defendant also claims SA Taylor erred in his grand jury testimony regarding Jany Leveille being an unlawful alien (**Doc. 1050 at 81–86**). As the Government points out (**Doc. 1086 at 2**), this argument was mooted by the United States' Unopposed Motion to Dismiss Counts 4 and 5 of the Superseding Indictment (**Doc. 978**) and the Court's Order granting the Motion (**Doc. 982**). After the Court granted the dismissal of Counts 4 and 5 of the Superseding Indictment, the Counts were renumbered[9] for trial—so that Counts 6 and 7 in the Superseding Indictment became Counts 4 and 5. Additionally, any complaints raised by Defendant Morton involving alleged errors from the grand jury under Fed. R. Crim. P. 12(b)(3) have been waived[10]. *See generally United States v. Bowline*, 917 F.3d 1227 (10th Cir. 2019) (explaining a court should not review an untimely Rule 12 argument without a showing of good cause).

The Court does not find that SA Taylor gave a false statement under oath. *United States v. Dunnigan*, 507 U.S. 87, 84 (1993). Here, SA Taylor was called by the Defendants and impeached (**Doc. 1001 at 37; Tr. at 2559 & 2567**). Thus, Defendant's complaint about SA Taylor's testimony at trial is either advantageous (because his credibility was subsequently called into question) or a self-inflicted wound (**Doc. 1050 at 67–69**). Either way, his testimony was not perjured nor was its admission tantamount to prosecutorial misconduct (**Tr. at 2342–2428 & 2443–2521**). In sum, the

---

[9] In the unopposed motion, the Government dismissed the charges alleging the co-Defendants aided and abetted Jany Leveille, an illegal alien, in possessing firearms in violation of 18 U.S.C. §§ 371 and 922(g)(5). Prior to the dismissal of these two Counts, the seven offenses alleged in the Superseding Indictment were: (1) Conspiracy to Provide Material Support to Terrorists in violation of 18 U.S.C. § 2339A; (2) Providing Material Support to Terrorists in violation of 18 U.S.C. §§ 2339A & 2; (3) Conspiracy to Murder an Officer or Employee of the United States in violation of 18 U.S.C. § 1117; (4) Conspiracy to Commit an Offense Against the United States in violation of 18 U.S.C. § 371; (5) Possessing a Firearm While Unlawfully in the United States in violation of 18 U.S.C. §§ 922(g)(5) & 2; (6) Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(c); and (7) Kidnapping in violation of 18 U.S.C. §§ 1201(a) & 2. **Doc. 85**.

[10] The Court uses the word waiver because Defendant admits to not raising this grand jury argument during pretrial motions (**Doc. 1050 at 81**)—although the use of "procedural bar" or "forfeiture" are also applicable. *See United States v. Leffler*, 942 F.3d 1192, 1996 (10th Cir. 2019) (distinguishing "waived" claims as those "intentionally relinquishe[d] or abandon[ed] . . . in the district court," from "forfeited" claims that a party simply "fail[ed] to raise"); *see also United States v. Campbell*, 26 F.4th 860, 871–73 (11th Cir. 2022) (discussing waiver versus forfeiture).

Court fails to see how the United States' actions constitute prosecutorial misconduct. Accordingly, Defendant's motion is denied with respect to SA Taylor's testimony.

## 2. Testimony of Jamil Louis-Jacques

Defendant Morton raises similar claims that the United States elicited perjured testimony from Jamil Louis-Jacques, or alternatively, failed to disclose exculpatory information. The United States argues that this testimony was not new, perjured, or exculpatory (**Doc. 1086 at 7–8**). Once again, the Court agrees.

Although Defendant Morton is displeased with the incriminating nature of Jamil's testimony (**Doc. 1050 at 79–80**), the fact Siraj ibn Wahhaj placed his hands on Abdul Ghani Wahhaj's neck area with pressure was corroborated by other witnesses (**Tr. at 587–88 & 825–27; Doc. 781, Ex. 1d at 14**). The Court does not find that Jamil Louis-Jacques gave a false statement under oath. Moreover, to the extent Jamil's testimony differed, he was cross-examined and impeached—and the Court instructed the jury on this point. **Doc. 1001 at 37; Doc. 1086 at 8–9**. Defendant's motion is, therefore, denied with respect to Jamil's testimony.

## B. The United States did not knowingly present perjured testimony

Defendant Morton argues that the discrepancies in the trial testimony of Jamil and SA Taylor constitutes perjury—further alleging that the United States knowingly elicited such perjured testimony. But Defendant fails to demonstrate that either witness's testimony at trial was false (thus, he cannot demonstrate they committed perjury). Perjury occurs when a witness, under oath, "willfully and contrary to such oath states or subscribes any material which he does not believe to be true." 18 U.S.C. § 1621. "Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991).

The fact Jamil's testimony or SA Taylor's testimony at trial were inconsistent[11] with previous statements, absent more, does not prove their testimony was false (**Doc. 1086 at 5–11**).

The jury had ample evidence to conclude that Defendant Morton joined and participated in the group's conspiracies to: (1) provide material support to terrorists; (2) kidnap Abdul Ghani Wahhaj; and (3) murder officers or employees of the United States. Defendant's discussion of inconsistencies in testimony from various other proceedings over the course of five years is unavailing.

The Court concludes that neither Jamil Louis-Jacques nor SA Travis Taylor committed perjury, the United States did not knowingly elicit perjured testimony, and the issue is inconsequential in light of the other evidence of Defendant's guilt.

## II. Alleged Jury Misconduct

Defendant Morton correctly cites the law, **Doc. 1050 at 2**, when he says a court may grant a new trial if a party presents admissible evidence of juror bias. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). The *McDonough* test requires proof that a juror failed to answer a question during *voir dire* truthfully. *Id.* at 556. But Defendant Morton's "contention that all the jurors were not truthful" in answering their questionnaires or during *voir dire* is not supported by any evidence (**Doc. 1086 at 11–12**). Instead, Defendant's allegations regarding jury misconduct are rooted exclusively in his belief that only a biased factfinder could have found him guilty (**Doc. 1050 at 2**). This is not the standard. *See Johnson v. Martin*, 3 F.4th 1210 (10th Cir. 2021) (discussing jury misconduct by way of "extraneous material"); *United States v. McHorse*, 179 F.3d 889, 904 (10th Cir. 1999) (discussing how proof of bias can amount to juror misconduct);

---

[11] Differences or inconsistencies in testimony do not establish perjury and provide Defendant with nothing other than impeachment evidence. *United States v. Card*, 46 F. App'x 941, 947–48 (10th Cir. 2002) (explaining how it is "quite a leap" to argue perjury based solely on inconsistent testimony). Thus, to the extent Jamil Louis-Jacques' trial testimony differed, the Court provided a jury instruction on impeachment. **Doc. 1001 at 37**.

*cf. Remmer v. United States*, 347 U.S. 227, 229 (1954) (presuming prejudice in cases of "private communication, contact, or tampering" with a juror during trial "about the matter pending before the jury").

When evaluating a claim of jury misconduct, a new trial may be granted "only where there is either a showing of actual bias or circumstances 'compel an imputation of inherent bias to the juror as a matter of law.'" *United States v. Easter*, 981 F.2d 1549, 1533 (10th Cir. 1992) (quoting *United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986)). Here, Defendant has made no "showing"—instead relying wholly on speculation that *all jurors* were biased against him (**Doc. 1050 at 2**). Given the absence of any evidence that would lead this Court to conclude jury misconduct, the Court will not order a new trial based on rank speculation.

## III. Alleged Discovery Violations

The United States' discovery obligations "are defined by Rule 16, *Brady*, *Giglio*, and the Jencks-Act." *United States v. Griebel*, 312 F. App'x 93, 96 (10th Cir. 2008) (unpublished). *Brady* requires disclosure of evidence that is favorable to an accused and is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). But "[n]ot every delay in disclosure of *Brady* material is necessarily prejudicial to the defense." *United States v. Burke*, 571 F.3d 1048, 1056 (10th Cir. 2009). In fact, the "mere possibility that evidence is exculpatory does not satisfy the constitutional material standard." *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994). The prosecution is not required to "divulge every possible shred of evidence that could conceivably benefit the defendant." *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995).

In his motion, Defendant Morton contends the United States failed "to timely turn over exculpatory evidence." **Doc. 1050 at 92**. The purported exculpatory evidence stems from the

above-mentioned impeachment evidence—namely, differences in the witnesses' grand jury testimony and their later statements. *Id.* However, in this case the United States provided the sought-after evidence (**Doc. 1086 at 13 & Doc. 1086-1**). In fact, the United States provided the discovery "well before trial and in accordance with the Court's scheduling order" (**Doc. 1086 at 13**). Thus, Defendant Morton failed to assert a legitimate factual basis for his claim and he is not entitled to a new trial on these grounds.

## IV. Cumulative Error[12]

"A cumulative-error analysis merely aggregates all the errors that individually have been found harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990). The cumulative-error analysis "should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." *Id.* at 1471 (citations omitted). Thus, a new trial is only warranted if Defendant's substantial rights were affected. *Id.* at 1470. As discussed in length above, Defendant Morton has failed to demonstrate that there were any errors[13] in the conduct of his trial. As such, there were no errors to accumulate—and Defendant's request for a new trial must be denied.

## V. Rule 29 and Sufficiency of the Evidence

Defendant Morton also challenges the sufficiency of the evidence (**Doc. 1086 at 1 n.2; Doc. 1119**). Although primarily levied as a claim of insufficient evidence "but for" the allegedly perjured testimony, the Court liberally construes this *pro se* pleading (**Doc. 1050 at 20–22**).

---

[12] Because Defendant is *pro se*, the Court reviewed for cumulative error based on his pleading that the evidence should be evaluated "collectively, not item-by-item." **Doc. 1050 at 3**.

[13] Defendant's Reply lists several grievances framed as rhetorical questions (**Doc. 1119 at 21–23**). The Court does not address each of these individually because they are baseless claims that were resolved in various prior Opinions and Orders. *See* **Doc. 39 (Detention); Docs. 188, 243, 384, 461 (Competency); Doc. 570 (Outrageous Government Conduct); Doc. 710 (Children's Statements); Doc. 962 (Coconspirator Statements); Doc. 969 (Omnibus Motion); Doc. 982 (Dismissing Counts 4 and 5).**

In ruling on a Rule 29 motion for acquittal, the Court, viewing the evidence most favorably to the Government, must determine whether a rational jury could have found the elements of the offense to have been proven beyond a reasonable doubt. At the same time, a court must give "considerable deference to the jury's verdict." *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015). But, in so doing, the evidence supporting the conviction must do more than raise a mere suspicion of guilt. *United States v. Anderson*, 189 F.3d 1201, 1205 (10th Cir. 1999).

Here, the evidence does more than raise mere suspicion of guilt. The evidence presented, if believed, established each element of the crimes charged. *United States v. Vallos*, 238 F.3d 1242, 1247 (10th Cir. 2001). For the reasons explained below, the Court must uphold the verdict. *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001).

Defendant's insufficiency of evidence argument primarily revolves around the "resulting in death" aspect of the kidnapping charges (**Doc. 1050 at 20 & 86; Doc. 1119 at 2–7**). Although Defendant Morton contends that he was unaware of why Abdul Ghani was taken from Hakima, **Doc. 1119 at 6 & 14**, the Court ruled previously—and repeatedly—that kidnapping is not a specific intent crime (**Doc. 969 at 13–16; Doc. 1001; Doc. 1002**). Despite his claim of knowing nothing, evidence was presented at trial that Defendant Morton was present at the family meeting that occurred after Hakima and law enforcement came to retrieve Abdul Ghani (**Tr. at 344–46, 356–57, 491, 555, 708–10, 878–80**). The jury was also presented with evidence that the co-Defendants' family reached out multiple times to the Defendants regarding Abdul Ghani's medical needs. *See* **Doc. 1086 at 19** (citing **Gov. Exs. 10a–c, 20–22, 89, 91, 92, 94**). Additionally, Defendant Morton even explains "the Journal details exactly what took place," **Doc. 1119 at 8**, and admits to personally transporting Abdul Ghani across state lines. *Id.* **at 6**. None of these arguments help his case for insufficiency of evidence on Counts 4 and 5.

His arguments about insufficient evidence on the § 1117 and § 2339A charges are equally unavailing (**Doc. 1119 at 23–28**). The fact the jury "merely took a different view of the evidence or the credibility of witnesses than [Defendant Morton]" does not equate to insufficient evidence (**Doc. 1086 at 14**). *See United States v. Kamahele*, 748 F.3d 984, 1003 (10th Cir. 2014) (explaining a jury is entitled to view the evidence "in a different way" than that posited by the Defendant).

Ultimately, sufficient evidence was presented to allow a rational juror to conclude beyond a reasonable doubt that Defendant Morton committed the charged offenses. Thus, the Court, once again finds that there is both direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom, and in the light most favorable to the Government, that a reasonable juror or jury could find Defendant guilty beyond a reasonable doubt with respect to Counts 1–5. Defendant's motion for reconsideration of his Rule 29 motion is therefore **DENIED**.

## CONCLUSION

The Court finds there is no basis for ordering a new trial because there is no evidence of prosecutorial misconduct, jury misconduct, or otherwise. The Court therefore concludes that the interests of justice do not require a new trial or post-verdict judgment of acquittal.

**IT IS HEREBY ORDERED** that Defendant's Motion for a New Trial (**Doc. 1050**) is **DENIED**.

**IT IS ALSO ORDERED** that Defendant's motion for reconsideration under Rule 29 for a post-verdict judgment of acquittal is **DENIED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE